UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT LAMAR HILL,<br><br>Defendant. | Case No. 2:16-cr-00019-BLW-7<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Robert Lamar Hill's Motion for

Compassionate Release pursuant to 18 U.S.C. 3582(c)(1)(A). *Mot. Reduce*

*Sentence* at 1, Dkt. 573. The Government opposes the motion. *U.S.' Obj. Mot.*

*Reduction Sentence* at 1, Dkt. 575. After considering the briefing and record, the

Court will deny the motion.

## BACKGROUND

In May 2017, this Court sentenced Mr. Hill to 151 months' incarceration and

5 years' supervised release after he pled guilty to Conspiracy to Distribute

Controlled Substances. *J. Criminal Case* at 2, Dkt. 422. As of this date, he has

served just over four years in prison. His projected release date is January 31,

**MEMORANDUM DECISION AND ORDER - 1**

2027. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last visited Sep. 20, 2021).

Mr. Hill is currently incarcerated at FCI Herlong. *Id.* He is 53 years old. *Id.* Hill brings this motion seeking compassionate release under 18 U.S.C. 3582(c)(1)(A). Hill claims that the inequity in the sentencing guidelines, reclassification of his prior felony to a misdemeanor, and his prison performance record give rise to extraordinary and compelling reasons that warrant release. Additionally, Hill claims untreated medical conditions and his risk factors for COVID-19 also warrant compassionate release.

## LEGAL STANDARD

Mr. Hill seeks compassionate release under 18 U.S.C. 3582(c)(1)(A). To grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. 18 U.S.C. § 3582. If the exhaustion requirement is met, the court must consider the 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3582. Then the Court may grant compassionate release only if the defendant shows that "extraordinary and compelling reasons warrant such a reduction." *Id.*; *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021); *see also United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019). The defendant bears the burden of establishing that extraordinary and

compelling reasons exist to justify compassionate release. *See United States v. Greenhut*, No. 2:18-cr-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing United States v. Sprague, 135 F.3d 1301, 1306–07 (9th Cir. 1998)).

## ANALYSIS

Mr. Hill has exhausted his administrative remedies and his motion is thus properly before the Court. As such, the Court must consider the 18 U.S.C. § 3553(a) factors. After which, the Court may grant compassionate release only if Mr. Hill shows that extraordinary and compelling reasons warrant such a reduction.

### 1.  § 3553(a) Factors

Turning to the § 3553(a) factors, consideration of these factors does not warrant a reduction of Mr. Hill's sentence. At the outset, it is noteworthy that at sentencing the Court sentenced at the bottom of the guideline range.  As detailed in the Presentence Investigation Report, Mr. Hill has an extensive criminal history dating back to at least 1998. *Am. Presentence Investigation Rep.* at 49–54, Dkt. 400. As such, the Court is not persuaded by Hill's arguments regarding § 3553(a). Even excellent prison conduct and serving a "lengthy part" of his sentence, does not change the appropriateness of the sentence in the first place—much less warrant release. As the Government points out, this was nothing more than what is

expected of Mr. Hill. *U.S.' Obj. Mot. Reduction Sentence* at 22, Dkt. 575.

Similarly, the Court is not persuaded that "a reduced sentence would support 'the need to avoid unwarranted sentencing disparities.'" *Mot. Reduce Sentence* at 34, Dkt. 573 (quoting 18 U.S.C. § 3553(a)(6)). Mr. Hill acknowledges that his sentence "was at the low-end of the applicable drug range of the Guidelines . . . ." *Id.* Otherwise stated, he was sentenced at the bottom of the calculated guideline range of 151-188 months. *J. Criminal Case* at 2, Dkt. 422. This does not amount to a sentencing disparity.

Finally, Mr. Hill also asserts he would not pose a danger to public safety. *Mot. Reduce Sentence* at 34, Dkt. 573. Mr. Hill notes that he is rated by the Bureau of Prisons as a "high" risk of recidivism—even though he argues that he should be rated as a "medium." *Id.* While this Court hopes Mr. Hill is able to eventually lead a crime-free life, the Court is not persuaded that he no longer poses a danger to public safety to such a degree as to warrant release. Given Mr. Hill's criminal conduct, Hill's sentence was appropriate at the time and remains so today. As such, consideration of the § 3553(a) factors do not warrant a reduction to the sentence the Court imposed.

While Mr. Hill briefly discusses the § 3553(a) factors, Hill spends the majority of his brief asserting the broad discretion this Court has under §

3582(c)(1)(A) and arguing four reasons that separately, and together, give rise to an extraordinary and compelling reason to warrant release. While this Court does have the breadth of discretion Mr. Hill articulates, he has not provided this Court with an extraordinary and compelling reason that would warrant release.

## 2.  Extraordinary and Compelling

Hill provides four reasons that, in his view, give rise to extraordinary and compelling reasons that warrant release: (1) inequity in the sentencing guidelines, (2) reclassification of his prior felony to a misdemeanor by state law, (3) his prison performance record, and (4) his untreated medical conditions coupled with his COVID-19 risk factors. However, as explained below, the reasons provided are not extraordinary and compelling reasons that warrant release.

### A. Inequity in Sentence Guidelines

In his motion, Mr. Hill asserts his sentence was "unusually harsh and unevenly enforced, and is an extraordinary and compelling reason for a sentence reduction." *Mot. Reduce Sentence* at 11, Dkt. 573. More specifically, Mr. Hill argues the inequity in the sentencing guideline ranges produces an inequitable sentence. Mr. Hill asserts that since his marijuana equivalent fell in the "low-end of the drug range," he was given "the exact same sentence as defendants at the high-end of the drug quantity range -- even though the high-end drug quantity may be

more than three times the amount of the low-end quantity (3,000 kilograms versus 10,000 kilograms, in the above example)." *Id.* at 12. Based on the presentence report, Hill was given a base offense level of 32. *Id.* at 11. "Hill contends, however, that since the drug quantity established by the PSR was closer to the 3,000 kilograms at the low-end than it was to the 10,000 kilograms at the high-end of the drug quantity range, a more appropriate base offense level may have been 31." *Id.* at 12–13. While creative and well-written, this reason is neither extraordinary nor compelling.

First, even if Hill's adjusted base level were taken as true, the adjustment would "produce an advisory guideline range of 140 to 175 months." *Mot. Reduce Sentence* at 15, Dkt. 573. As previously mentioned, Hill was sentenced to 151 months. *J. Criminal Case* at 2, Dkt. 422. Mr. Hill's sentence is well within the guidelines and still in the bottom half of that range. This militates against a finding that the punishment was "unusually harsh and unevenly enforced" as claimed by Mr. Hill.[1]

Second, Mr. Hill's argument is more a commentary and critique of the

---

[1] Importantly, these were stipulated drug amounts that Mr. Hill agreed to in his plea agreement. *Am. Presentence Investigation Rep.* 48, Dkt. 400. As the PSR noted, "the drug amounts could be larger, out of an abundance of caution the probation officer relied on the stipulated drug quantities." *Id.*

Sentencing Commission guidelines than a reason warranting release. Drug quantity ranges are the purview of the Sentencing Commission operating under the authority of Congress. Either the Sentencing Commission, through the 180-day "report and wait" provision, or an act of Congress may make the essential adjustments to the sentencing guidelines that Mr. Hill seeks. *See, e.g.*, *United States v. Litteral*, 910 F.2d 547, 552 (9th Cir. 1990) (discussing the legislative scheme of adjustments to sentencing guidelines). Mr. Hill asks this Court to retroactively adjust his base level offense because he finds issue with the appropriateness of congressional policy. But Congress has made a policy decision that this Court is bound to follow in determining the guidelines range.

Still, Mr. Hill is correct that Congress has granted this Court broad discretion in § 3582(c)(1)(A) when evaluating motions for sentence reductions. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) ("The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."). "As explained by the Fourth Circuit, '[t]here is as of now no applicable policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are empowered . . . to consider *any* extraordinary and compelling reason for release

that a defendant might raise.'" *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (internal quotations omitted). While this Court does have broad discretion, the reason provided still must satisfy the statutory standard. 18 U.S.C. § 3582(c)(1)(A)(i) ("extraordinary and compelling reasons *warrant such a reduction; . . . .*") (emphasis added). It is here that Mr. Hill's argument fails.

Mr. Hill vigorously argues that his base level should be lowered, but even shifting his base level does not undercut the appropriateness of his sentence. Nor does it establish the injustice that Hill claims. Arguing that his sentence, which came at the bottom of the guideline range, should have been closer to the middle of the guideline range, is neither an extraordinary nor compelling reason warranting release.[2] Absent such a reason, this Court will not use the broad discretion provided in § 3582(c)(1)(A) as a remedy to address a defendant's disagreement with a congressional policy.

---

[2] This would be true if guidelines bound the district court, but they do not. *See United States v. Simon*, 858 F.3d 1289, 1298 (9th Cir. 2017) ("The district court remains able to vary from the Guidelines, which are advisory, but must, as with all sentencing decisions, provide a reasoned justification for the decision."). The advisory nature of sentencing guidelines fully undermines Mr. Hill's argument that equitable, retroactive adjustment of the base level gives rise to an extraordinary and compelling reason that would warrant release.

**B. Reclassification of Prior Felony to a Misdemeanor by State Law**

Mr. Hill also asserts that "California's reclassification of Hill's prior felony conviction as a misdemeanor and the Sentencing Commission's policy statement on reclassifications provides extraordinary and compelling reasons for a sentence reduction." *Mot. Reduce Sentence* at 17, Dkt. 573. Hill cites non-binding precedent, both published after Mr. Hill's sentencing, to assert "the district court could have taken into account the fact that Hill's prior conviction is deemed to be a misdemeanor offense under state law and had the authority to grant Hill a downward departure." *Mot. Reduce Sentence* at 20–21, Dkt. 573. Hill argues this should have been argued before the Court and could give rise to ineffective assistance of counsel—even though he "does not make that type of claim in this motion." *Mot. Reduce Sentence* at 21, Dkt. 573. Mr. Hill's contention that there was a possibility of an offense reclassification—which would result in a re-calculation of his criminal history category—was raised as an issue at sentencing, and the Court was unpersuaded. *Sent'g Tr.*, *Exhibit B* at 35–37, Dkt. 575.

Proposition 47, which reclassified previously felonious criminal conduct as misdemeanors, was made law in California in 2014—nearly three years prior to sentencing. *People v. Martinez*, 413 P.3d 1125, 1127 (Cal. 2018). It appears Mr. Hill sought reclassification after his arrest—perhaps with his impending sentence

as the impetus. Still, Mr. Hill raised the Proposition 47 issue at the sentencing hearing. *Sent'g Tr.*, *Exhibit B* at 35–36, Dkt. 575. Still, as the Court noted during the sentencing hearing, "it seems clear that [Mr. Hill] spent almost all of his time, since 1998 engaged in one criminal enterprise or another. And I think that is a very strong argument why the Criminal History Category of VI is not overstated." *Sent'g Tr.*, *Exhibit B* at 37, Dkt. 575. As such, the Court found, based on the guidelines, the criminal history category was VI, and the range was 151 to 188 years. *Id.* The Court considered the reclassification implications at the sentencing phase and rejected it. *Id.* In the Court's view, § 3582(c)(1)(A) should not be a means to relitigate that which this Court previously decided. As this argument has previously been rejected at the sentencing phase, it cannot be resurrected and repackaged as an extraordinary and compelling reason to warrant release.

### C. Mr. Hill's Prison Performance Record

Mr. Hill also asserts that his "exceptional performance in prison is an extraordinary and compelling circumstance warranting a sentence reduction." *Mot. Reduce Sentence* at 21, Dkt. 573. Mr. Hill concedes that rehabilitation alone is not an extraordinary and compelling circumstance warranting release. *Id.* However, Mr. Hill argues, that taken together, his "clear conduct throughout his incarceration," his educational advancement toward his GED, and progress in drug

MEMORANDUM DECISION AND ORDER - 10

treatment programs give rise to an extraordinary and compelling reason to warrant release. *Mot. Reduce Sentence* at 21–22, Dkt. 573. While the Court commends Mr. Hill for the progress he is making, these are expected outcomes on Mr. Hill's path toward rehabilitation. Even though an accomplishment may be considered extraordinary when compared to an inmate's previous life path, such behavior does not mean it is an extraordinary and compelling reason that warrants release.

### D. Mr. Hill's Untreated Medical Conditions and COVID-19 Risk Factors

Mr. Hill asserts that the Bureau of Prison's failure to treat his medical conditions, "particularly those medical conditions that make him more susceptible to COVID-19, is yet another extraordinary and compelling reason warranting a sentence reduction." *Mot. Reduce Sentence* at 26, Dkt. 573. More specifically, Mr. Hill claims that he suffers from hypertension that has been left untreated by the Bureau of Prisons. *Id.* He also claims the presence of a mass in his left lung that has been unexplored as to whether it was cancerous. *Mot. Reduce Sentence* at 28–29, Dkt. 573. However, this claim is contradicted by prison medical records. *See Exhibit A* at 2, 15–18, 24, 33, 71, Dkt. 576 (treatment of hypertension); *Exhibit A* at 3–5, 72–76, Dkt. 576 (treatment of lung mass). Mr. Hill's claim of "failure to treat" is undercut by his medical records that establish Mr. Hill has been treated for both hypertension and the unknown mass in his lung. As such, it is not an extraordinary

and compelling reason to warrant release.

Mr. Hill later claims that his hypertension and the mass in his lung put him at risk for COVID-19. Additionally, Hill claims that years of smoking heroin, marijuana, and cigarettes further complicate these risks. However, as the Government notes, Mr. Hill has been offered a vaccine against COVID-19 but declined. *U.S.' Obj. Mot. Reduction Sentence* at 11, Dkt. 575; *Exhibit A* at 47, Dkt. 576. The Ninth Circuit has not addressed whether an individual who has been offered and refused a COVID-19 vaccination can satisfy the extraordinary and compelling standard. District courts in the Ninth Circuit have, however, found that an inmate's refusal of an offered COVID-19 vaccination undercuts a request for compassionate release. *See, e.g.*, *United States v. Barraza-Macias*, No. 3:12-CR-00392-MO-4, 2021 U.S. Dist. LEXIS 95798, 2021 WL 2000241, at *1 (D. Or. May 19, 2021) ("Mr. Barraza-Macias's argument in favor of release is significantly undercut by the fact that he was offered and refused a vaccine that has so far proven to be highly effective at preventing severe illness and death.") (citing When You've Been Fully Vaccinated, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html )); *United States v. Richmond*, No. 1:14-CR-00171-NONE, 2021 U.S. Dist. LEXIS 107564, 2021 WL 2337626, at *6 (E.D. Cal. June 8, 2021) ("In cases [where] an inmate cites the risk of contracting

COVID-19 as a basis for relief but refuses to receive a vaccine, courts across the country have nearly uniformly denied compassionate release because such refusal undercuts [an inmate's] fear of infection.") (citations omitted)); *United States v. Cao*, No. 3:18-CR-00059-SLG, 2021 U.S. Dist. LEXIS 86356, 2021 WL 1792056, at *1 (D. Alaska May 5, 2021) (denying request for compassionate release noting "the medical records do not support Mr. Cao's assertion as to the severity of his medical condition," and he "was offered, and refused, the COVID-19 vaccine."); *United States v. Baeza-Vargas*, No. CR1000448010PHXJAT, 2021 U.S. Dist. LEXIS 66089, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (collecting cases)). The Court finds the reasoning of these cases to be persuasive—especially in light that many of these cases were decided while the COVID-19 vaccine was only operating under emergency use authorization. Now that at least three vaccines have been fully approved by the FDA, refusing a readily-available COVID-19 vaccine seriously undercuts the contention that the risk of infection with COVID-19 constitutes extraordinary and compelling circumstances. As such, considering all of Mr. Hill's medical history and medical decisions, Mr. Hill's health conditions

do not constitute extraordinary and compelling reasons that would warrant release.

Finally, Mr. Hill asserts that his "conditions of confinement during the COVID-19 pandemic are another extraordinary and compelling reasons warranting a sentence reduction." *Mot. Reduce Sentence* at 24, Dkt. 573. While the Court is sympathetic for Mr. Hill, this also does not give rise to an extraordinary and compelling reason that warrants release. He asserts the pandemic has resulted in "lockdowns, reduced educational programming, and lack of work opportunities." *Id.* These results, however, are not unique to those incarcerated. Since the beginning of the pandemic, unprecedented lockdowns, reductions in educational programming, and lack of work opportunities have touched every corner of the globe. Truly, these have been extraordinary times. But an extraordinary moment in history is not a compelling reason to warrant an individual release from federal prison. This is especially true, as here, where the extraordinary circumstances are not unique to the prison or to the inmate. This, coupled with the readily available vaccine and the current state of coronavirus control within FCI Herlong, leads this Court to conclude that the reasons provided are not extraordinary or compelling reasons that warrant Mr. Hill's release.

Even taking all proffered reasons together, as applied to Mr. Hill's circumstances, such reasons are not extraordinary and compelling reasons that

**MEMORANDUM DECISION AND ORDER - 14**

warrant release. Further, consideration of the § 3553(a) factors do not warrant a

reduction to the sentence this Court imposed. In both cases, Mr. Hill has not met

his burden. As such, Mr. Hill's Motion to Reduce Sentence must be denied.

**ORDER**

**IT IS ORDERED that** Defendant Robert Lamar Hill's Motion to Reduce

Sentence (Dkt. 573) is **DENIED**.

DATED: September 28, 2021

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 15**